UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JEFFREY EDWARD ROTHBARD,<br><br>Appellant and Cross-Appellee,<br><br>v.<br><br>MARTIN SHRADER, individually and as a representative of SilverCreek Construction, LLC<br><br>Appellee and Cross-Appellant. | ) | No. 1:25-cv-01832-JRO-MJD |

**ORDER ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT**

Before the Court is Jeffrey Edward Rothbard's appeal and a cross-appeal by Martin Shrader individually and on behalf of SilverCreek Construction, LLC ("SilverCreek"). Rothbard, proceeding *pro se*, appeals the Bankruptcy Court's judgment finding $254,073.09 of Rothbard's debts to Shrader nondischargeable under 11 U.S.C. § 523(a)(2)(A). Shrader appeals the Bankruptcy Court's judgment that Rothbard's obligations to SilverCreek are not "debts" that Shrader may enforce under the bankruptcy code and that Shrader is not entitled to treble damages and attorney's fees under the Indiana Crime Victim's Relief Act. For the reasons set forth below, the Bankruptcy Court's judgment is **AFFIRMED in part**, **REVERSED in part** and **REMANDED** for further proceedings.

## I. LEGAL STANDARD

Under 28 U.S.C. § 158(a), district courts of the United States have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy courts. On appeal from a bankruptcy court, the district court may

affirm, modify, or reverse a judgment, order, or decree, or remand the case for further proceedings. Fed. R. Bankr. P. 8013. The district court conducts a *de novo* review of questions of law, *e.g., Mungo v. Taylor,* 355 F.3d 969, 974 (7th Cir. 2004), but findings of fact are not set aside unless clearly erroneous and "due regard [must] be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." (citing Fed. R. Bankr. P. 8013). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court upon examining the entire evidence is "left with the definite and firm conviction that a mistake has been committed." *E.g., Kovacs v. United States,* 614 F.3d 666, 672 (7th Cir. 2010).

## II. BACKGROUND

This appeal arises from an adversarial proceeding filed in the Bankruptcy Court by Martin Shrader, representing himself personally and SilverCreek, in response to Jeffery Rothbard declaring Chapter 7 bankruptcy.

### A. Rothbard's History

Rothbard has a criminal history. In 2011, he pled guilty to felony forgery in Marion County, Indiana. Dkt. 3 at 4; Dkt. 10 at 135. Then, he pled guilty to wire fraud in the Southern District of Indiana in 2015. Dkt. 3 at 4; Dkt. 10 at 135. The federal conviction arose from Rothbard soliciting investors in a company and using their investment to pay personal expenses. Dkt. 3 at 4.

### B. The SilverCreek Venture

In June of 2021, Rothbard founded SilverCreek, a residential construction company. Dkt. 3 at 4. Rothbard purported to be looking for an investor who

could help grow the company and better manage its operations and accounting. *Id.* at 5. In June 2022, a mutual acquaintance, who was also a SilverCreek customer, introduced Rothbard to Shrader, a Certified Public Accountant with decades of experience in real estate development. *Id.* at 4–5. Shrader began investing in the company; in total he contributed $254,073.09 to SilverCreek. *Id.* Shrader did not conduct any due diligence as to either Rothbard or SilverCreek. *Id.* at 6. He did not know of Rothbard's prior convictions or the state of SilverCreek's accounts when he began contributing to the company. *Id.*

On July 1, 2022, Rothbard and Shrader executed an Amended Operating Agreement for SilverCreek, making them 50/50 members. *Id.*; Dkt. 8-2 at 21–29. The Amended Operating Agreement included a section limiting the liability of each member to the company, creditors, or third parties to "(i) the amount of the Member's Capital Contribution which has not theretofore been returned to the member as a Distribution (including a Distribution upon liquidation) and (ii) any amount of the Member's Capital Contribution which has been returned and for which the member remains liable under the Act." Dkt. 8-2 at 22–24. The Amended Operating Agreement did not make any provision for member distributions. *See id.* at 22–29; Dkt. 3 at 6.

**C. Rothbard's Fraud**

Shrader eventually—and without Rothbard's "full cooperation"—accessed SilverCreek's books and records and found them to be "a mess." Dkt. 3 at 6; Dkt. 10 at 54. SilverCreek failed to pay taxes for 2021, failed to obtain necessary bonds, failed to timely pay its accounting firm, and failed to provide its

subcontractors and independent contractors with necessary tax documents. Dkt. 3 at 6. Rothbard instead used SilverCreek accounts to pay his own personal and household expenses, including his wife's personal expenses. *Id.* at 7.

In the second half of 2022 and beginning of 2023, some customers of SilverCreek were not receiving the goods or services for which they contracted. When customers confronted Rothbard on the discrepancies, Rothbard repeatedly lied to customers about the status of their projects, going to great lengths to hide the fact that he had not ordered the necessary materials or obtained the required permits. *Id.*

Understandably, Shrader's and Rothbard's relationship soured. In March 2023, Shrader sent a demand letter to Rothbard. *Id.* Rothbard responded by cutting Shrader's access to SilverCreek's books and records. *Id.*

All told, the Bankruptcy Court identified over $100,000 in unauthorized distributions and expenses that Rothbard took from SilverCreek's accounts between June 1, 2022, and March 5, 2023. *Id.* Over the same time period, Shrader received no money from SilverCreek. *Id.*

Shrader eventually sued Rothbard and his wife in Hamilton County, Indiana, case number 29D02-2512-CE-013456, seeking damages for criminal conversion and unjust enrichment. *Id.* at 8.

**D. Procedural History**

On May 10, 2023, Rothbard filed for Chapter 7 bankruptcy. Dkt. 3 at 8. At the time of his filing, several lawsuits besides Shrader's were pending against

Rothbard and SilverCreek for claims of fraud and breach of contract. *Id.* At least one of the suits also named Shrader as a defendant. *Id.*

Shrader filed this adversary proceeding against Rothbard in early 2024, for himself and on behalf of SilverCreek. *Id.* at 8; Dkt. 8-2 at 1–20. The Complaint brought three counts, each citing 11 U.S.C. § 523(a)(2), (4), and (6): Nondischargeability of Certain Debts Relating to Breaches of Fiduciary Duties Owed to SilverCreek (Count I); Nondischargeability of Certain Debts Relating to Breaches of Fiduciary Duties to Shrader (Count II); and Nondischargeability of Certain Debts Relating to Criminal Conversion of the Investment (Count III). Dkt. 8-2 at 13–18. Shrader sought treble damages, costs, and reasonable attorney's fees under the Indiana Crime Victim's Relief Act, Ind. Code § 34-24-3-1. *Id.* at 19.

The Bankruptcy Court held a two-day trial on November 4, 2024, and January 13, 2025. *Id.* at 242–43. Both parties had trial counsel. *Id.* at 246. After trial, the Bankruptcy Court held a status conference where it "expressed its confusion as to the exact nature of Shrader's § 523(a) claims" and ordered post-trial briefs to clarify. Dkt. 3 at 4 n.1. In his proposed findings of fact, Shrader asserted $1,306,104.99 should be found nondischargeable to SilverCreek under a breach of fiduciary duty claim based on liabilities asserted against SilverCreek due to Rothbard's actions. Dkt. 8-2 at 273. After receiving both parties' post-trial briefs and proposed findings of fact, the Bankruptcy Court entered Findings of Fact and Conclusions of Law. Dkt. 3 at 3–17.

The Bankruptcy Court found that Shrader had contributed $254,073.09 to SilverCreek and found that amount to be nondischargeable debts obtained "through false pretenses and/or actual fraud" under 11 U.S.C. § 523(a)(2)(A). *Id.* at 14. It found all of SilverCreek's or Shrader's liabilities to third parties "entirely speculative" as debts Rothbard owed Plaintiffs. *Id.* at 10. Accordingly, it concluded these monies were not "debts" for purposes of Section 523(a). It also declined to analyze Shrader's arguments under Section 523(a)(6) because he failed to frame them "under federal bankruptcy law" as specifically requested by the Bankruptcy Court. *Id.* at 9 n.3. Finally, the Bankruptcy Court declined to impose punitive damages and attorney's fees, finding the Seventh Circuit's precedent "divided" on whether punitive damages are nondischargeable, and finding that when they were awarded, they were only awarded under Section 523(a)(6). *Id.* at 16–17.

Rothbard appealed *pro se*, and Shrader cross-appealed. Dkts. 1, 3.

## III. DISCUSSION

### A. Rothbard's Appeal

Rothbard presents four questions on appeal, which the Court restates as two: (1) whether the Bankruptcy Court erred in classifying various SilverCreek expenses as Rothbard's personal expenses instead of business expenses, and (2) whether the Bankruptcy Court's findings are clearly erroneous because no party introduced certain important information at trial and Rothbard's trial counsel failed to properly cross-examine key witnesses. But before addressing these

issues, the Court first considers Shrader's argument that the Court should disregard Rothbard's appellate brief entirely due to procedural deficiencies.

**1. Rothbard's procedural deficiencies**

Shrader argues that because Rothbard failed to prepare an appendix as required by Federal Rule of Bankruptcy Procedure 8018(b)(1), the Court should dismiss his appeal entirely. Dkt. 11 at 16–17. Rule 8018 (b)(1) requires an appellant to serve and file an appendix with the relevant docket entries, pleadings, and other materials. Shrader also argues Rothbard's appeal is frivolous on its face, and thus subject to dismissal, because it seeks to disrupt the Bankruptcy Court's findings based on Rothbard's dissatisfaction with his trial counsel's performance. *Id.* at 17–19. Shrader says reversal is not an available remedy for ineffective assistance of counsel.

Rothbard indeed failed to comply with the requirements of Rule 8018(b)(1). This failure complicated the Court's review of his arguments, and as discussed below, prevented the Court from evaluating his factual arguments. But Shrader's cross-appeal requires the Court to wade into the facts of this case in any event. And "given our system's preference for reaching a merits disposition whenever possible, we often adjudicate the merits, despite poor briefing." *Sullers v. Int'l Union Elevator Constructors, Loc. 2*, 141 F.4th 890, 897 (7th Cir. 2025); *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 555 (7th Cir. 1996) ("[I]t is incumbent on [the court] to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical

grounds."). Thus, the Court will consider Rothbard's appellate brief on the merits.

**2. The Bankruptcy Court's classification of expenses as personal**

Rothbard argues first that the Bankruptcy Court clearly erred by mischaracterizing legitimate business expenses as personal, including credit card expenses, utility charges for his personal residence (also registered as SilverCreek's official business address), and fuel charges.

Rothbard fails to support his argument with citations to the record that this Court could review to identify clear error. And a reviewing court has no duty to "scour the record in search of evidence" to help an appellant establish his argument. *Jaworski v. Master Hand Contractors, Inc.*, 882 F.3d 686, 691 (7th Cir. 2018) (quoting *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008)). Accordingly, the Court cannot conclude the Bankruptcy Court clearly erred in finding that Rothbard's expenditures were personal rather than business.

Even if the Court found error—which it does not—it would not reverse the Bankruptcy Court's judgment. "A district court may affirm a bankruptcy court's exercise of discretion in a case where the bankruptcy court made erroneous findings of fact only after the district court establishes that these findings constituted a harmless error." *In re Crivello*, 134 F.3d 831, 841 (7th Cir. 1998) (citing Fed. R. Bankr. P. 9005; Fed. R. Civ. P. 61). An error is harmless when, in light of all the evidence in the record, the reviewing court is not persuaded that the challenged judgment was substantially influenced by the erroneous finding.

*Palmacci v. Umpierrez*, 121 F.3d 781, 793 (1st Cir. 1997) (cited in *In re Crivello*, 134 F.3d at 841, as "confirming the standard for harmless error"). Here, the Bankruptcy Court's judgment was grounded on a finding of actual fraud at the outset of the parties' business relationship, not its characterization of particular expenditures. So any error was harmless.

The bankruptcy code authorizes a court to find debt nondischargeable when the debt is one "for money . . . obtained by . . . false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). That is what the Bankruptcy Court did here by finding that Rothbard owed the entirety of Shrader's Contributions to SilverCreek as a debt to Shrader because Rothbard obtained the money by "false pretenses and/or actual fraud." Dkt. 3 at 14. The Bankruptcy Court did not ground its judgment in a line-by-line parsing of personal expenses from business expenses.[1] As the Bankruptcy Court put it, "There is simply no evidence to suggest that Rothbard ever intended to use the

[1] Rothbard specifically argues the Bankruptcy Court erred in categorizing $1,500 weekly payments to him as "improper" distributions rather than wages for his role as a project manager at SilverCreek. Dkt. 2 at 13–14. But the Bankruptcy Court in fact found $19,500 of these payments to be authorized distributions. Dkt. 3 at 7 n.2. And there was sufficient evidence to support the Bankruptcy Court's finding that the payments were distributions rather than wages, including the lack of evidence that the business paid payroll taxes on these payments. *Compare* dkt. 8-2 at 24 (amended operating agreement treating payments to member-employees as wages for federal income tax purposes) *with* dkt. 10 at 177–80 (Rothbard claimed income in 2022 but SilverCreek did not file taxes in 2022). The Bankruptcy Court did not err in finding $19,500 in payments to be authorized distributions rather than wages, and even if it did err, that error would still be harmless.

Contributions for legitimate business purposes but instead fraudulently solicited Shrader's investment for his own personal gain." *Id.* at 15.[2]

### 3. The adequacy of the Bankruptcy Court's findings

Rothbard spends the remainder of his brief arguing that the Bankruptcy Court's findings were flawed because testimony went untested by cross examination and important evidence was omitted from the record. He says the Bankruptcy Court did not have the opportunity to consider the "critical context." Dkt. 19 at 3; Dkt. 2 at 11–12. These arguments are not appropriate for appellate review.

Rothbard essentially asks the Court to consider new evidence he did not submit to the Bankruptcy Court at trial.[3] It is an established rule in the Seventh Circuit that courts do "not consider evidence on appeal that was not before the [trial] court when it rendered its decision." *Midwest Fence Corp. v. U.S. Dep't of Transp.*, 840 F.3d 932, 946 (7th Cir. 2016). The opportunity for Rothbard to submit evidence and cross-examine witnesses was at the trial, not on appeal.

---

[2] While Rothbard later argues the Bankruptcy Court erred because there was insufficient evidence to establish his intent to defraud, dkt. 19 at 2–3, Rothbard did not present this argument in his appellate brief and it is accordingly waived. *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). Further, the Court's review reveals ample evidence to support the conclusion Rothbard intended to defraud Shrader. *See* dkt. 3 at 4 (Rothbard pled guilty to federal wire fraud for a scheme by which "he solicited investors and then used their investment to pay personal expenses"); Dkt. 10 at 185–86 (Rothbard acknowledging Shrader confronted him about using business funds for gym memberships and personal utility bills); *id.* at 57, 60 (Shrader testifying that he believed SilverCreek funds paid Rothbard's wife's car payment).

[3] Rothbard does not argue the Bankruptcy Court improperly prevented him from offering evidence or cross-examining witnesses. As the trial transcript shows, Rothbard's trial counsel did in fact cross-examine witnesses, including Shrader. Dkt. 10 at 123–24.

*See Wainwright v. Sykes*, 433 U.S. 72, 90 (1977) (trial is the event where "[s]ociety's resources [are] concentrated" to decide questions before the court "within the limits of human fallibility.").

* * *

Rothbard has not demonstrated reversible error. Because he cited no record evidence, Rothbard has not shown any of the Bankruptcy Court's findings were clearly erroneous. Any error is harmless because the judgment rests on Rothbard obtaining Shrader's Contributions through fraud under Section 523(a)(2)(A), not the Bankruptcy Court's characterization of business expenses. And he cannot present new evidence on appeal. Accordingly, the Bankruptcy Court's order is **AFFIRMED** regarding dischargeability of Shrader's Contributions under 11 U.S.C. § 523(a)(2)(A).

**B. Shrader's Cross-Appeal**

Shrader cross-appealed and raises two issues. First, he argues that the Bankruptcy Court erred by finding that SilverCreek's liabilities to third parties are not Rothbard's underlying debt to Plaintiffs under the bankruptcy code. Dkt. 11 at 28–32. Second, he argues the Bankruptcy Court erred in disregarding his arguments for criminal conversion under Section 523(a)(6), which in turn precluded his recovery for punitive damages and attorney's fees under the Indiana Crime Victims Relief Act. *Id.* at 32–36. For the reasons explained below, Shrader's second argument succeeds while his first fails.

**1. Discharge of debts asserted by third parties**

Shrader argues that the Bankruptcy Court erred when it found no underlying debt to Shrader or SilverCreek based on Rothbard's defrauding of third parties. Shrader claims that these third parties may hold SilverCreek and Shrader personally liable for Rothbard's fraud under a theory of piercing the corporate veil. The crux of this issue, as framed by the Bankruptcy Court, is whether the amount third parties may pursue from SilverCreek and Shrader can truly be said to be "debts" owed by Rothbard to SilverCreek.

Nondischargeability in cases where civil liability is an open question at the time of filing can be thought to present two underlying questions: first, whether there is an underlying debt based on a state-law claim, and second whether that debt is nondischargeable under federal law. *In re Johnson*, 120 B.R. 461, 468 (Bankr. N.D. Ind. 1990). The question presented here, whether a "debt" exists under the bankruptcy code, is a question of law reviewed *de novo*. *See Mungo v. Taylor,* 355 F.3d 969, 974 (7th Cir. 2004). In the end, Shrader's arguments that Rothbard was indebted to Shrader or SilverCreek based on the claims asserted by third parties fail.

While it is clear Rothbard owed money to many, possibly all, of the third parties identified by Shrader, *see* dkt. 11 at 30, Shrader's appellate briefing does not establish a viable claim to these funds. Under the most generous reading of Shrader's arguments, he asserts a "debt" either via a claim for breach of fiduciary

duty[4] or indemnification. *See* dkt. 8-2 at 10 (Shrader's proposed findings of fact and conclusions of law); Dkt. 3 at 10 (Bankruptcy Court rejecting theory of indemnification). Shrader cites no cases to support either theory. What's more, the Bankruptcy Court specifically referenced the liability cap in SilverCreek's operating agreement as one reason it doubted Shrader could hold Rothbard liable for the requested amounts. *Id.* at 11 n.4 (citing dkt. 8-2 at 23–24). Shrader's appellate brief does not address this clause at all. Shrader fails on appeal to point the Court to law and facts that support Rothbard's liability to SilverCreek or Shrader personally as it relates to obligations to third parties.

Shrader further argues the Bankruptcy Court erred in finding the debt too speculative. The Bankruptcy Court cited *Rohm* & *Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.,* 32 F.3d 205, 2011 (5th Cir. 1994). Shrader says the reasoning from *Rohm* does not apply. Dkt. 11 at 28.[5]

In *Rohm*, a business appealed the district court's determination of the priority of payments to its various creditors. 32 F.3d at 206. The court had found taxes owed the IRS were the lowest priority, and the business appealed. *Id.* It argued injury—and thus standing—on a theory that its officers might one day be held personally liable for the taxes and the business would then be forced to

---

[4] Shrader makes no argument on appeal that the Bankruptcy Court erred in not finding Rothbard breached his fiduciary duty to either SilverCreek or Shrader. Accordingly, the Court does not reach this question.

[5] While a Fifth Circuit case on standing bears marginal relevance at best to the case at hand, Shrader points to no other caselaw to make his argument that the debt is not speculative. Again, at no point on appeal does Shrader argue the "debt" is Rothbard's liability based on a breach of fiduciary duty claim.

indemnify them. *Id.* at 209. The Fifth Circuit disagreed. It first reasoned that the business had failed to show it would be forced to indemnify its officers. *Id.* at 211. And second, it reasoned that even if such an obligation existed, the business had "failed utterly" to demonstrate IRS action against its officers was likely. *Id.*

On Shrader's reading of *Rohm*, the debtor showed no evidence the IRS would seek to recover funds owed. Dkt. 11 at 28. But here, Shrader says, he has produced ample evidence that Rothbard's victims assert liability against both Shrader and SilverCreek. *Id.* Shrader also challenges the Bankruptcy Court's finding because there is "copious evidence" that individuals seek payment for Rothbard's wrongs from SilverCreek and Shrader personally. *Id.* He says that fact distinguishes this case from *Rohm* such that the two "could not be more different." *Id.*

Shrader misses the mark. The Bankruptcy Court did not cite *Rohm* for the "speculative" nature of the business's debt to the IRS. It cited *Rohm* for the notion that Shrader has not shown Rothbard owes him or SilverCreek indemnification. The Bankruptcy Court said:

> To the extent Shrader seeks to except these obligations as obligations owed to him and/or SilverCreek, the Court is also unwilling to grant such relief as Rothbard's obligation to indemnify Shrader or SilverCreek for these amounts is entirely speculative. *See Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation, Inc.,* 32 F.3d 205, 2011 [sic] (5th Cir. 1994).

Dkt. 3 at 10. In short, *Rohm* presents a two-step analysis, and where Shrader focuses on the second, the Bankruptcy Court looked to the first. In fact, *Rohm* is analogous here because Shrader, like the business there, failed to establish that

the debtor would have to indemnify anyone. That's what the Bankruptcy Court found in Shrader's case, and it did not err in doing so.

In sum, Shrader's arguments that SilverCreek's potential exposure to third parties was a debt Rothbard owed to Shrader are unavailing. The Bankruptcy Court's order is **AFFIRMED** in this regard.

**2. Claim under Section 523(a)(6)**

Shrader next argues the Bankruptcy Court erred in declining to consider awarding treble damages and attorney's fees under Section 523(a)(6). He argues the Bankruptcy Court specifically erred in (i) finding Shrader did not present his arguments under federal bankruptcy law, and (ii) declining to award nondischargeable punitive damages and attorney's fees.

**a. Shrader's Section 523(a)(6) argument**

Shrader first argues the Bankruptcy Court erred in not reaching the merits of his arguments under 11 U.S.C. § 523(a)(6). To explain its decision on this front, the Bankruptcy Court wrote,

> As to [Shrader's] claim under § 523(a)(6), his brief asserts that Rothbard committed a "willful and malicious" injury confusingly under the heading "Mr. Rothbard Cannot Discharge Certain Debts Pursuant to 11 U.S.C. § 523(a)(2)," but offers no analysis under relevant bankruptcy law. The claim is instead discussed under Indiana's requirements for criminal conversion, which is not the governing standard, despite the Court's explicit request at its April 14, 2025 status conference that Shrader reframe his arguments under federal bankruptcy law. As such, the Court will not discuss Rothbard's claim under § 523(a)(6).

Dkt. 3 at 8 n.3. Effectively, the Bankruptcy Court found that Shrader had waived his Section 523(a)(6) claim. A court's determination that an argument has been

waived is reviewed *de novo*. *Hernandez v. Cook Cnty. Sheriff's Off.*, 634 F.3d 906, 912 (7th Cir. 2011) (citing *e360 Insight v. Spamhaus Project*, 500 F.3d 594, 599 (7th Cir. 2007)). The Court's "underlying concern [when considering waiver] is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Id.* at 913.

Shrader explains on appeal that his post-trial brief included an inadvertent error: both the headings of Subsection II.A. and II.B. read "Mr. Rothbard Cannot Discharge Certain Debts Pursuant to 11 U.S.C. § 523(a)(2)." Dkt. 8-2 at 222; *id.* at 236; dkt. 11 at 32. Yet the substantive argument under subsection II.B. of Shrader's brief is a clear Section 523(a)(6) argument. Here is a reproduction of his brief:

> **B. Mr. Rothbard Cannot Discharge Certain Debts Pursuant to 11 U.S.C. § 523(a)(2)**
>
> Secondly, Mr. Rothbard may not discharge the debt owed to Mr. Shrader pursuant to the Investment, as the conversion of those funds constitutes a "willful and malicious injury" under § 523(a)(6); *see also Kawaauhau v. Geiger*, 523 U.S. 57, 63 (1998). The Seventh Circuit has said that "willful means deliberate or intentional . . . and malicious means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Garoutte v. Damax, Inc*, 400 B.R. 208, 212 (S.D. Ind. 2009) (citing *In re Thirtyacre*, 36 F.3d 697, 700 (7th Cir. 1994)).

Dkt. 8-2 at 236. The brief continues in this section to argue that (a) Rothbard was liable to Shrader for criminal conversion under Indiana law, and (b) this liability was a non-dischargeable debt under 11 U.S.C. § 523(a)(6).

11 U.S.C. § 523(a)(6) provides that debt is not dischargeable when it is debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." Bankruptcy courts have held that when conversion amounts to an intentional tort (rather than a result of mere negligence or recklessness), it does the dual work of establishing a debt under a state-law claim and showing debt is for "willful" and "malicious injury" under Section 523(a)(6). *In re Wood*, 303 B.R. 370, 373 (Bankr. C.D. Ill. 2003). Thus, it makes sense that Shrader's post-trial brief focused on Indiana law to establish Rothbard's liability. That is what Section 523(a)(6) requires. Indiana law also incentivizes Shrader to pursue a claim for criminal conversion specifically because a successful plaintiff can receive punitive damages and is entitled to recover the cost and fees of litigation. Ind. Code § 34-24-3-1 (The Indiana Crime Victim's Relief Act).

Shrader also specifically cited *Sam's NA, Inc. v. U.S. Small Bus. Admin.* (*In re Sam's NA, Inc.*), Nos. 13-90259-BHL-11, 14-59035, 2016 Bankr. LEXIS 3766, at *42–43 (Bankr. S.D. Ind. Oct. 19, 2016) in his post-trial brief. Dkt. 8-2 at 238. There, the bankruptcy court found a debtor was liable for criminal conversion, assessed whether to award punitive damages, and found itself bound to award attorney's fees. *Id.* at *38–43. Shrader asked the Bankruptcy Court to do the same analysis, invoking federal bankruptcy law explicitly.

Accordingly, the Bankruptcy Court erred in declining to consider Shrader's claim under Section 523(a)(6) or how *In re Sam's NA, Inc.* applied. *Hernandez*, 634 F.3d at 913 (finding the district court erred in applying waiver when party's

briefing "left much to be desired" but the plaintiff's argument had "been at issue at every significant stage of [the] litigation" and the defendant was not prejudiced). Shrader's mislabeled header no doubt hindered the Bankruptcy Court's review of Shrader's claims; but it did not waive his Section 523(a)(6) argument. *See Kathrein v. City of Evanston, Ill.*, 636 F.3d 906, 913 (7th Cir. 2011) (errant headings "make[] the court's task more difficult" but "do not waive arguments" (quoting *Balentine v. Thaler*, 626 F.3d 842, 849 (5th Cir. 2010))). The Section 523(a)(6) argument was squarely at issue in the trial as reflected in Shrader's substantive argument and also acknowledged in Rothbard's post-trial brief. Dkt. 8-2 at 280–82 (arguing "Shrader failed to meet his burden under either § 523(a)(2)(A) or (a)(6)").

In sum, Shrader advanced his Section 523(a)(6) argument from complaint through post-trial brief and should receive a decision on the merits of that argument. Accordingly, the judgment of the Bankruptcy Court is **REVERSED in part,** and this matter is **REMANDED** for the Bankruptcy Court to consider whether Shrader has proven a nondischargeable debt for criminal conversion under Section 523(a)(6) based on the evidence presented at the trial.

**b. Punitive damages and attorney's fees**

Finally, Shrader argues the Bankruptcy Court erred in declining to award attorney's fees and consider an award of punitive damages in the form of treble damages. The Bankruptcy Court wrote that categorizing punitive damages as nondischargeable is only appropriate "where liability was imposed under § 523(a)(6) for a willful and malicious injury and not under § 523(a)(2)." Dkt. 3

at 16 (indirectly citing *Grogan v. Garner*, 498 U.S. 279, 282 n.2 (1991)).[6] Because it did not analyze Shrader's arguments under Section 523(a)(6), the Bankruptcy Court declined to consider awarding either punitive damages or attorney's fees.

As the Bankruptcy Court noted, when a debt is nondischargeable under Section 523(a)(6), the associated punitive damages are also nondischargeable. Dkt. 3 at 16; *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) ("Punitive damages are a debt owed by a tortfeasor to his victim, and in this case they are a debt consequent upon a willful and malicious injury."). And the Supreme Court has authorized punitive damages to be awarded by the Bankruptcy Court in the first instance. *See Cohen v. de la Cruz*, 523 U.S. 213, 215 (1998). Finally, where state law requires an assessment of costs and fees to the prevailing party, the Bankruptcy Court must award them. *Sam's NA, Inc.*, Nos. 13-90259-BHL-11, 14-59035, 2016 Bankr. LEXIS 3766, at *43. When such fees are ancillary to a nondischargeable debt under Section 523(a), the fees are likewise nondischargeable. *Klingman v. Levinson*, 831 F.2d 1292, 1296 (7th Cir. 1987); s*ee also In re McGuffey*, 145 B.R. 582, 597 (Bankr. N.D. Ill. 1992).

On remand, if the Bankruptcy Court finds Shrader has proven nondischargeable debt under Section 523(a)(6) after considering Shrader's argument on the merits, it should award nondischargeable attorney's fees under

---

[6] The Supreme Court took up this issue head on a few years after *Grogan*, holding that "[Section] 523(a)(2)(A) prevents the discharge of all liability arising from fraud, and that an award of treble damages therefore falls within the scope of the exception." *Cohen v. de la Cruz*, 523 U.S. 213, 215 (1998).

the Indiana Crime Victim's Relief Act and consider awarding nondischargeable punitive damages in accord with the law discussed above.

## IV. CONCLUSION

The Bankruptcy Court's judgment is **REVERSED in part** and **REMANDED** to the Bankruptcy Court for it to consider the following: whether Shrader has proven a nondischargeable debt for criminal conversion under Section 523(a)(6), and if so whether Shrader is entitled to (a) punitive damages and (b) an award of reasonable attorney's fees and costs under the Indiana Crime Victim's Relief Act. The Bankruptcy Court's judgment is **AFFIRMED** in all other respects. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 9/29/2026

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

JEFFREY EDWARD ROTHBARD
1440 ROSSMAY DRIVE
WESTFIELD, IN 46074

All ECF-registered counsel of record